IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLESTON, INC., a Nebraska Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>DERRICK PFEIL,<br><br>        Defendant. | 4:16-CV-3153<br><br>ORDER ON FINAL PRETRIAL CONFERENCE |
| CHARLESTON, INC., a Nebraska Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>DANIEL PFEIL,<br><br>       Defendant. | 4:16-CV-3154<br><br>ORDER ON FINAL PRETRIAL CONFERENCE |

A final pretrial conference was held on the 6th day of June, 2017. Appearing for the parties as counsel were:

      1. Counsel for Plaintiff: Richard L. Rice and Andrew C. Pease from Crosby Guenzel LLP.

      2. Counsel for Defendant: Erik Eisenmann and Marnie Jensen from Husch Blackwell, LLP.

    **(A)**   **Exhibits**. See attached Exhibit List.

**(B) Uncontroverted Facts.** The parties have agreed that the following may be accepted as established facts for purposes of this case only:

1. Charleston, Inc. is in the business of selling HVAC and plumbing products wholesale to plumbing and heating contractors.

2. Daniel Pfeil ("Dan") was employed by Charleston as a Sales Representative in Charleston's Sioux City Branch Office from about October 15, 2004, to July 12, 2016.

3. Derrick Pfeil ("Derrick") was employed by Charleston as Branch Manager for Charleston's Sioux City Branch Office from about October 15, 2004, to July 12, 2016.

4. Bob Charleston, Charleston's president and owner, hired the Pfeils because he wanted them to bring their existing client relationships to Charleston.

5. When the Pfeils were hired, they were given a packet of paperwork including a two-page non-compete agreement (the "Agreement").

6. Dan signed the Agreement.

7. Derrick did not sign the Agreement.

8. The Agreement provides, in part:

Upon termination of Employee's employment with employer for whatever reason, whether voluntary or involuntary, Employee agrees that he/she shall not, for a period of six months following separation from employment, contact or solicit business by any means or method, direct or indirect, any customers of Employer who were his/her accounts, or any company whom he/she solicited or called upon actively in an attempt to obtain business within the last six months prior to the date of separation from employment.

9. Dan and Derrick primarily worked from Charleston's Sioux City, Iowa Branch Office, but on occasion worked from Charleston's Branch Offices in Fremont Nebraska, and Kansas City, Missouri.

10. As employees of Charleston, Dan and Derrick were expected to develop customer relationships to expand Charleston's business primarily at Charleston's Sioux City, Iowa Branch Office.

11. Dan and Derrick's "sales territory" at Charleston included primarily Iowa, but also certain geography in Minnesota, South Dakota, and Nebraska, and they both worked with and sold to customers in all of those states.

12. Dan and Derrick worked for Charleston for approximately twelve years, and in the process gained knowledge regarding the business relationships with Charleston's customers, including pricing and customer lists.

13. In 2008, Bob Charleston acquired property located at 1523 Center Street in Sioux City, Iowa.

14. Bob Charleston established a Nebraska limited liability company to own the property at 1523 Center Street in Sioux City.

15. Bob Charleston offered Dan and Derrick membership interests in 1523 Center Street LLC through a Membership Interest Incentive Plan ("MIIP").

16. Charleston, Inc. is not a party or signatory to the MIIP.

17. Dan and Derrick signed the MIIP.

18. The MIIP provided, in part:

**Competition Limitation.** Eligible Employees shall not, during his employment by Charleston, Inc., and for a period of one year following termination of employment, directly or indirectly compete with Charleston, Inc. with respect to any customer or account with which the Eligible Employee had substantial personal contact while employed by Charleston, Inc.

19. Bob Charleston does not recall discussing this non-compete provision with Dan or Derrick

20. Dan was not aware that the MIIP contained a non-compete or competition restriction, and never discussed that non-compete language with Derrick, Bob Charleston, or anyone else at Charleston.

21. Derrick was not aware that the MIIP contained a non-compete or competition restriction, and never discussed that non-compete language with Dan, Bob Charleston, or anyone else at Charleston.

22. Derrick did not read the MIIP in its entirety before signing.

23. On July 12, 2016, Dan and Derrick provided Charleston with a letter of resignation from their employment with Charleston.

23. Prior to returning their Charleston-owned cell phones, Dan and Derrick initiated a factory-reset of their Charleston-owned cell phones, deleting customer contact information, as well as personal photographs and videos.

24. Prior to initiating a factory-reset of his Charleston-owned cell phone, Dan's wife, with his knowledge and consent, transferred the information on his Charleston-owned cell phone, which included customer contact information, as well as family photographs and videos, into a personal cloud storage account.

25. Dan used information transferred from his Charleston-owned cell phone into his personal cloud in the course of his employment with Hot Water Products.

26. Dan and Derrick were hired to work for Hot Water Products. Although there is some overlap between the products and services offered by HWP and Charleston, Charleston offers more products and services than HWP.

27. Dan and Derrick are employed by Hot Water Products in sales, performing similar functions as their prior positions with Charleston.

28. After hiring the Pfeils, HWP sent out a mass solicitation dated October 26, 2016, bearing Derrick and Dan's signatures.

29. Peterson Air Conditioning and Heating in Sioux City, IA received the mass solicitation dated October 26, 2016.

30. Since leaving Charleston, Dan and Derrick sold goods and/or services on behalf of HWP to customers with whom they conducted business while employed by Charleston.

31. <span style="color:red">Defendants will provide a supplemental response to interrogatories 6&7 on June 23, 2017.</span>

(C) **Controverted and Unresolved Issues.**

The following legal issues remain to be determined:

Defendants contend that the following legal issues remain to be determined at trial, while Plaintiffs contend that they have been decided by the Court in connection with the May 31, 2017 Decision and Order on Defendants Motions for Summary Judgment:

1. Whether Nebraska or Iowa law governs to the Agreement signed by Dan.

2. Whether Nebraska or Iowa law governs the MIIP signed by Dan and Derrick.

3. Whether the restrictive covenant in the Agreement is enforceable (under the applicable law) against Dan.

4. Whether the restrictive covenant in the MIIP is enforceable (under the applicable law) against Dan and Derrick.

5. If it is enforceable, whether Charleston has the right to enforce the restrictive covenant in the MIIP.

6. Whether Dan owed a duty of loyalty to Charleston during his employment with Charleston.

7. Whether Derrick owed a duty of loyalty to Charleston during his employment with Charleston.

All parties agree the following legal issues remain to be determined at trial:

1. Whether the actions taken by Dan following his employment with Charleston constitute a breach of the restrictive covenant in the Agreement.

2. Whether the damages alleged by Charleston were proximately caused by the alleged breach(es) by Dan, and the extent of said damages.

   Plaintiff's Special Damages
   Plaintiff alleges it has suffered special damages in the form of lost profits as a direct and proximate result of the actions of Defendants. Based on the information to date, Plaintiff has suffered damages totaling $204,522.30 in the form of lost profits. This damages amount may increase following Defendants' supplemental discovery responses prior to trial.

MIL-28563113-1

3. Whether the actions taken by Dan and Derrick following their employment with Charleston constitute a breach of the restrictive covenant in the MIIP.

4. Whether the damages alleged by Charleston were proximately caused by the alleged breach(es) by Dan and Derrick, and the extent of said damages.

5. Whether Dan took any actions during the course of his employment with Charleston that constituted breach(es) of his duty of loyalty.

6. Whether Charleston suffered any damages as a proximate result of such breach by Dan of his duty of loyalty to Charleston and the extent of said damages.

7. Whether Derrick took any actions during the course of his employment with Charleston that constituted a breach of his duty of loyalty.

8. Whether Charleston suffered any damages as a proximate result of such breach by Derrick of his duty of loyalty to Charleston and the extent of said damages.

9. Whether Charleston had a "business expectancy" with its customers and potential customers.

10. If such business expectancy exists, whether Dan and/or Derrick interfered with such expectancy, and whether such interference was justified or privileged under the law.

11. If such interference is established, and is deemed to not be justified or privileged, whether Charleston has suffered any damages as a proximate result of such interference and the extent of said damages.

12. Whether the Court has the power to order the injunctive relief requested by Plaintiff.

13. Assuming the Court has the power to order the injunctive relief requested by Plaintiff, whether that relief is appropriate under principles of equity.

14. Whether Plaintiff is entitled to costs and Attorney's fees pursuant to the paragraph three of the Agreement.

(D) **Witnesses.** All witnesses, including rebuttal witnesses, expected to be called to testify by plaintiff, except those who may be call for impeachment purposes as defined in NECivR 16.2(c) only, are:

1. Robert Charleston, Valley, NE 68064.
2. Carrie Thomas, , Fremont, NE 68025.
3. Daniel Pfeil, Akron, IA 51001.
4. Derrick Pfeil, Dakota Dunes, SD 57049.
5. Matt Updike, Fremont, NE 68025.
6. Jerry McKnight, Sioux City, IA 51106.
7. Charlie Benton, Dakota Dunes, SD 57049.

All witnesses, including rebuttal witnesses, plaintiff may call if the need arises are:

8. Scott Peery, Grain Valley, MO 64029 (last known).
9. Mike Mengwasser, Grimes, IA 50111.
10. Bill Baker, Sioux City, IA 51104.
10. Mark Ward, Omaha, NE 68135
11. Carrie Pfeil, Akron, IA 51001.
12. Paul Devries, Sioux City, IA 51106.

All witnesses expected to be called to testify by defendants, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

1. Derrick Pfeil
2. Daniel Pfeil
3. Robert Charleston
4. Mark Narke, Bellevue, NE 68147.
5. Keenan Bowery, Omaha, NE 68152-1839.
6. Bill Baker
7. Scott Peery

8. Carrie Thomas

9. Charlie Benton

10. Mark Ward

11. Carrie Pfeil

12. Paul DeVries

**(E)** **Expert Witnesses' Qualifications**.

Experts to be called by plaintiff and their qualifications are: None.

Experts to be called by defendants and their qualifications are: None.

**(F)** **Voir Dire**. Not applicable.

**(G)** **Number of Jurors**. Not applicable.

**(H)** **Verdict**. Not applicable.

**(I)** **Briefs, Instructions, and Proposed Findings**. Counsel have reviewed NECivR 39.2(a), 51.1(a), and 52.1, and suggest the following schedule for filing trial briefs, proposed jury instructions, and proposed findings of fact as applicable: at least five (5) working days before the first day of trial.

**(J)** **Length of Trial**. Counsel estimate the length of trial will consume not less than 2 day(s), not more than 2 day(s), and probably about 2 days.

(K) **Trial Date.** Trial is set for June 26 and 27, 2017.

        CHARLESTON, INC., Plaintiff,

        BY: CROSBY GUENZEL LLP
        Its Attorneys
        Federal Trust Building
        134 South 13th Street, Suite 400
        Lincoln, Nebraska 68508
        Telephone (402) 434-7300
        rlr@crosbylawfirm.com
        acp@crosbylawfirm.com

        By   /s/ Richard L. Rice
        Richard L. Rice (18637)
        Andrew C. Pease (25292)

DANIEL PFEIL and DERRICK PFEIL,
Defendants.

/s/ Erik K. Eisenmann
Erik K. Eisenmann (WI #1081410)
*Pro Hac Vice*
Laura L. Malugade (WI #1086527)
*Pro Hac Vice*
HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
erik.eisenmann@huschblackwell.com
laura.malugade@huschblackwell.com

*Attorneys for Defendants*

and

Gene Summerlin (NE# 19611)
Marnie A. Jensen (NE# 22380)
HUSCH BLACKWELL LLP
13330 California Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com

June 8, 2017.

BY THE COURT:

_____
Cheryl R. Zwart
United States Magistrate Judge